United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Alfredo Marquez, Jr., individually and on behalf of those similarly situated, Plaintiffs<br><br>v.<br><br>Flextronics America, LLC, *and others*, Defendants | Civil Action No. 12-61520-Civ-Scola |

### Order on Motion to Dismiss

At its essence, this case is about a choice. Plaintiff Alfredo Marquez was given a choice—a difficult choice—but a choice nonetheless. He was offered the choice between collecting severance benefits or pursuing another job opportunity. Choosing the former might have exposed Marquez to a harsh job market and a possibility of unemployment. The latter would not have permitted Marquez severance benefits. Marquez chose the job, and now he sues his former employer and related entities, alleging that their failure to pay him severance benefits under his former employer's severance plan violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*.

Defendants move to dismiss his Third Amended Complaint for failing to state a valid claim. For the reasons set forth below, the Court grants Defendants' Motion (ECF No. 77) and dismisses the Third Amended Complaint without prejudice.

### Background[1]

Marquez is a former employee of Flextronics America, LLC (Flextronics) who worked as a retail services technician in the division called "Retail Technical Services – Verizon Wireless" (RTS). Flextronics had a contract with Verizon Wireless (Verizon) whereby employees in the RTS division such as Marquez would work in Verizon stores and provide technical support to Verizon customers. For these employees, Flextronics created a severance plan (the Plan), which provides qualifying employees severance benefits. One requirement to qualify for the Plan is that the employee must be involuntarily terminated.

---

[1] It is well established that a court ruling on a motion to dismiss must accept well-pled factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007); *see also Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). As such, this Court considers all the facts as true in the light most favorable to the Plaintiff, solely for the purpose of this Motion to Dismiss.

In May 2011, Marquez received a letter from Flextronics informing him that Flextronics was terminating him and many other employees in the RTS division because Verizon had elected to terminate its contract with Flextronics. The letter indicated that Marquez's official termination date would be August 31, 2011. On May 13, 2011, Flextronics emailed a document entitled FAQ to Marquez, which assured Marquez that he would be eligible to apply for a job at Verizon due to Flextronics waiving any hiring "restrictions." (ECF No. 59-3 at 2). However, Flextronics sought and received Verizon's agreement that its hire date for the Flextronics employees whom it hired would be August 28, 2011 and that those employees would be removed from the Flextronics payroll on August 27, 2011. Flextronics employees were given a deadline of August 1, 2011 to accept or decline Verizon's offer of employment.

Marquez's personnel file indicates that he was "Terminated" by Flextronics on August 27, 2011. This termination was initiated on August 25, 2011 and was completed on August 27, 2011. He filed a timely claim for severance benefits under the Plan. Flextronics denied Marquez's claim on the grounds that he was ineligible for benefits because he "voluntarily resigned his position prior to the Severance Date of 8/31/11 to work for Verizon Wireless." (ECF No. 59, ¶ 37). After unsuccessfully appealing the denial, Marquez initiated this lawsuit on August 3, 2012.

Marquez amended his complaint first in November 2012 and then again in December 2012. On September 30, 2013, the Court granted Defendants' Motion to Dismiss all seven counts of Marquez's Second Amended Complaint (ECF No. 54 at 14) but gave Marquez leave to amend his complaint. On October 31, 2013, Marquez filed his Third Amended Complaint, which contains four counts brought under ERISA. Counts I, II, and III are claims against the Severance Plan and Plan administrator brought under ERISA § 502(a)(1). Marquez claims he is entitled to benefits under the Plan because he was involuntarily or constructively discharged. Count IV is a hybrid interference claim brought under both ERISA § 510 against Flextronics and Flextronics International and under § 502(a)(1) against the Severance Plan and Plan Administrator.

Defendants move to dismiss the Third Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a valid claim. The Court **grants** the Motion (ECF No. 77), but will permit Marqiez to replead his constructive discharge claim with more particularity.

## Analysis

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all of a complaint's well-pled factual allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v.*

*McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Though the Rule does not require detailed factual allegations, it does require "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets, internal citation, and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* So a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will be dismissed. *Id.*

Faced with a motion to dismiss, a court should therefore "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotation marks omitted). Moreover, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (brackets and internal quotation marks omitted). "This is a stricter standard than the Supreme Court described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010) (internal quotation marks omitted). These precepts apply to all civil actions, regardless of the cause of action alleged. *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011).

### 1. Count I: Benefits Under § 502(a)(1) Based on Involuntary Termination

Count I of Marquez's complaint is brought under ERISA § 502(a)(1) against the Severance Plan and the Plan Administrator. Section 502(a)(1)(B) states: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Plan states that the Participant's termination from the Company "must be involuntary, as determined by the Company. A Participant who

voluntarily resigns his/her employment with the Company prior to his/her actual involuntary termination date is not eligible for benefits under the Severance Plan." (ECF No. 59-1, ¶ 44). Marquez claims he is entitled to benefits under the Plan because he was involuntarily terminated under the terms of the Plan. He alleges on information and belief that Flextronics effectively terminated him and similarly situated employees on August 27, 2011 by ceasing its payroll on that date. Defendants argue that Marquez's claim for involuntary termination should be dismissed for failure to state a claim. The Court agrees.

Marquez's own pleadings belie his claim that his termination was "involuntary." For example, Marquez alleges that Verizon was obligated to inform Flextronics no later than August 8, 2011 of the names of Flextronics employees who were leaving to go work at Verizon, so that Flextronics could remove those individuals from payroll on August 27, 2011. (ECF No. 59, ¶ 46). Marquez further alleges that his personnel file indicates that he was "Terminated" on August 27, 2011 and therefore "Flextronics terminated Marquez." (ECF No. 59, ¶ 32). But Marquez misses steps in his allegations. Did he accept the Verizon offer and, more importantly, did he convey his intention to accept the offer to his employer or Verizon? Did Flextronics "simply remove" Marquez from its payroll on August 27, 2011 because Marquez had resigned and agreed to work for Verizon? Marquez does not say. Instead, he merely states—in conclusory fashion—that he did not resign from Flextronics. (ECF No. 59, ¶ 46).

Marquez argues that whether he actually began working with Verizon the following week after the payroll stopped is "not the issue"—"[t]he point was that he was terminated before he had to make his decision of whether to continue his employment with Flextronics or to show up for work with Verizon." (ECF No. 81 at 5). However, this contention is contradicted by his allegations that he was required to inform Verizon by August 1 of his decision and that he "*did* go work for Verizon." (ECF No. 59, ¶ 32, n.2). Marquez suggests that he could have shown up at Flextronics on August 31 ready and willing to work but for his "involuntary" termination. Yet he does not allege any reason he could not have changed his mind at the eleventh hour and kept working for Flextonics up until August 31. If Marquez changed his mind, rejected Verizon's offer, and tried to stay at Flextronics longer—he must say so. Defendants are correct that simply postulating hypotheticals is insufficient to survive a motion to dismiss.

Marquez's omissions of facts and the factual inconsistencies with his alternative counts leave the Court unable to ascertain whether Marquez states a plausible claim for relief. No matter the standard of review, the course of events here—accepting a job, knowing that your employer will be informed of your acceptance of a new job, and your current employer then removing you

from payroll the day before your new job begins—does not constitute involuntary termination under the Plan. While a litigant can plead in the alternative, liberal pleading rules have limits. Marquez should not set forth inconsistent or alternative statements of fact in his pleadings unless he is "legitimately in doubt about the facts in question." *American Intern. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996).

Marquez knows whether he accepted the Verizon offer and whether he resigned. He knows whether he told Verizon or Flextronics of his plans to do so. Yet he omits this information. The Court has previously noted the troubling inconsistency between Marquez's stopping payroll allegation and the rest of his allegations. (ECF No. 54 at 14). The Court went so far as to remind Marquez of his Rule 11 obligations and to recommend that he "precisely spell out" the stopping payroll allegation. (*Id.* at 15) Marquez has failed to do this. Instead, Marquez has conveniently and strategically eliminated certain facts essential to whether Flextronics's stopping his payroll on August 27, 2011 constitutes involuntary termination. Therefore, Count I is dismissed.

### 2. Count II: Benefits Under § 502(a)(1) Based on Constructive Discharge

In Count II, Marquez alleges that he was constructively discharged and therefore is entitled to benefits under the Severance Plan. Specifically, he contends that he was constructively discharged "by dint of Flextronics having informed [him] of [his] impending discharge after negotiating a deal with Verizon which constrained the employees to accept employment with Verizon Wireless commencing prior to the date on which Flextronics had informed them they would be terminated, or else remain at Flextronics until August 31, 2011." (ECF No. 59, ¶ 52). Marquez says that he was "compelled by circumstances to cease employment with Flextronics prior to the termination date set by Flextronics." (ECF No. 59, ¶ 54). The Court acknowledges that Marquez faced a difficult choice, but difficulty is not the standard for constructive discharge.

A claim for constructive discharge requires that the employer make the conditions of employment so intolerable that a reasonable person in the employee's position would be compelled to resign. *See Rowell v. Bellsouth Corp.*, 433 F.3d 794, 802, 805 (11th Cir. 2005) ("The earliest formulations of the doctrine of constructive discharge, however, have always required a showing that the resignation be the product of intolerable or very unpleasant working conditions apart from the influence of any additional economic benefits offered by the employer in which the employee had no vested right."). According to his complaint, Marquez had a choice between taking his severance and then looking for a job or giving up his severance by accepting full-time employment with Verizon. He points to the 10.7% unemployment rate in Florida as evidence

of his constructive discharge. (ECF No. 59, ¶ 33). However, simply reciting the unemployment rate for Florida is not enough. Marquez says nothing about the job prospects for someone in Marquez's field of work or for someone with Marquez's skillset.

Furthermore, Marquez has failed to allege facts regarding his own decision-making process which led to his resignation. *See Connors v. Chrysler Financ. Corp.*, 160 F.3d 971, 974 (3d Cir. 1998) (finding no constructive discharge in age discrimination claim because "Connors retired from [defendant] only after making an informed decision based on economic realities."). In *Connors*, the court pointed out that "intolerability" is not established by "showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision . . . ." *Id.* at 976. Marquez fails to allege, for example whether he had time to look over the Verizon offer, consider other employment options, or discuss this offer with his family or financial advisors.  Marquez likewise fails to allege the parameters of the job offer from Verizon, the amount of severance he was entitled to under the Plan with Flextronics, or whether he would have been able to work at Verizon at some point after August 31. These facts, if known, should be alleged in the complaint, as they are essential to determining whether Marquez had time to mull the options over and make an informed economic decision based on his own personal circumstances or whether he was in fact, compelled to resign and therefore constructively discharged. Even assuming all facts alleged are true, Marquez has not pled a plausible claim of constructive discharge.  A difficult and stressful situation is simply not enough. Count II is dismissed, but the Court will give Marquez the opportunity to replead to allege his constructive discharge claim with more specificity.[2]

### 3. Count III: Benefits Under § 502(a)(1) Based on Express Terms of Severance Plan

In Count III, Marquez brings suit against the Severance Plan and the Plan Administer, which Marquez alleges is Flextronics International by default. Specifically, the Plan states that "[no] one, including an employer or any other person, may fire a participant or otherwise discriminate against a participant in any way to prevent that participant from obtaining a severance benefit or exercising the participant's rights under ERISA."  (ECF No. 59, ¶ 58). Marquez alleges that Flextronics and Flextronics International discriminated against him to prevent his obtaining severance by "concoct[ing]" an agreement with

---

[2] The Court understands Marquez's reluctance to plead constructive discharge with facts specific to Marquez, given the obvious implications for potential class certification.  However, those implications do not excuse Marquez's duty to plead a claim of relief that is plausible on its face.

Verizon and "targeting" Marquez. (*Id.* ¶ 58). But for these "discriminatory acts" Marquez would have received severance benefits under the Plan. (*Id.* ¶ 60).

Defendants move to dismiss Count III and argue that this provision is not a substantive provision of the Plan. The Court agrees. Marquez cites no authority for the proposition that a provision informing individuals of their rights under § 510 constitutes a substantive provision that can be enforced under § 502(a)(1). In fact, case law seems to suggest otherwise. In *Cruthis v. Metropolitan Life Insurance Co.,* 356 F.3d 816, 818 (7th Cir. 2004), the court held that a phrase in a summary plan description (SPD) informing participants of their right to file a claim to recover benefits in state or federal court was not an enforceable and substantive provision of the contract. In *Cruthis*, the court also pointed out that "several courts [] have addressed this issue," and ruled that the relevant language was a "statutorily required disclosure of an employee's ERISA rights," not a forum selection clause. *Id.* at 818–19. *See also Clorox Co. v. U.S. Dist. Court for the N. Dist. of Cal.*, 779 F.2d 517, 521 (9th Cir. 1985).

The rationale of *Cruthis* applies here. An SPD is a mechanism for informing plan participants of the terms of the plan and benefits in a summary fashion. The Code of Federal Regulations sets forth a model statement for the plan drafter to ensure that the SPD complies with ERISA. *See* 29 C.F.R. § 2520.102-3(t). It is clear that the provision here was included to comply with ERISA, as it was copied nearly verbatim from the regulations. And as in *Cruthis*, the provision here appears under the section entitled "Statement of ERISA Rights." (ECF No. 59-1 at 9). Marquez argues that *Cruthis* does not apply because here the Plan document also serves as the SPD. However, Marquez cites no authority for this distinction.

Furthermore, Count III is defective for another reason. Because this is essentially a § 510 claim, it should be brought against the employer, Flextronics. And even though Marquez couches his claim as arising under § 502, he fails to allege any action by the Plan or Plan Administrator. Marquez cannot bring what is essentially a § 510 interference claim against his employer, by suing the Plan for a breach of a provision, when that plan provision is merely a statutorily mandated part of the SPD. Count III is dismissed.

### 4. Count IV: Section 510 Claim Based on Interference with ERISA Rights

Count IV seeks declaratory and injunctive relief under ERISA § 510 against Flextronics and Flextronics International and benefits under ERISA § 502(a)(1). Section 510 makes it unlawful for an employer to act against an employee "for the purpose of interfering with the attainment of any right to

which such participant might become entitled" under a benefit plan. Marquez alleges that Flextronics and possibly Flextronics International violated ERISA § 510 because Flextronics set Marquez's termination date as August 31, 2011 despite having negotiated a start date with Verizon of August 28, 2011 (ECF No. 59, ¶ 68). "[T]here was no reason for this schedule other than to preclude Mr. Marquez and the members of the class from qualifying for Severance Plan benefits." (*Id.*). As a result of this conduct, "Flextronics International and/or the Plan Administrator should be enjoined from asserting (1) that the termination of employment of Mr. Marquez and the members of the class by Flextronics was not involuntary and (2) that Mr. Marquez and the members of the class voluntarily resigned from Flextronics." (*Id.* ¶ 69). Marquez asks that the Court declare that Marquez did not voluntarily terminate his employment with Flextronics prior to the Termination Date or that the Termination Date be declared to have been August 27, 2011. As a result of this equitable relief, Marquez claims that he is then entitled to benefits under the Severance Plan under ERISA § 502(a)(1).

Because the Court is giving Marquez leave to replead his constructive discharge claim, at this time it need not address whether he has adequately pled a § 510 claim of interference based on constructive discharge. The Court does acknowledge two things, however. First, the Court notes the odd procedural bootstrapping that has occurred in Count IV. Marquez essentially claims a § 510 violation but argues that he is entitled to relief under § 501(a)(1)(B). The Court makes no ruling as to what type of relief Marquez might be entitled to under § 510 except to note that it appears that most courts would not permit such bootstrapping and would limit Marquez to equitable relief under § 510. *See Eichorn v. AT & T Corp.*, 484 F.3d 644, 658 (3d Cir. 2007) (holding that plaintiffs could not seek relief under ERISA § 502(a)(1)(B) for § 510 violation); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992) ("[T]o enforce the terms of a plan under Section 502, the participant must first qualify for the benefits provided in that plan . . . Section 510 makes unlawful interference with a participant's ability to meet these qualifications in the first instance."); *see also Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir. 1999); *Alexander v. Bosch Auto. Systems, Inc.*, 232 F. App'x 491 (6th Cir. 2007); *but see Goldberg v. Cushman & Wakefield Nat'l Corp.*, No. 4:09-cv-700-Y, 2010 WL 3835143 (N.D. Tex. Sept. 30, 2010).

Second, the Court notes that based on the current allegations, Marquez's § 510 claim is distinguishable from most other § 510 cases involving a difficult choice in that Marquez was not fleeing the stick—but reaching for the carrot. *See, e.g., Welsch v. Empire Plastics, Inc.*, 42 F. Supp. 2d 748, 754 (N.D. Ohio 1999) (finding no adverse employment action under § 510 where plaintiffs quit

to secure medical benefits and were not "fleeing from a stick, [but were] reaching for a carrot."). Count IV is dismissed without prejudice.

### Conclusion

Defendants Motion to Dismiss (ECF No. 77) is **granted**, and Marquez's Third Amended Complaint is dismissed. As such, the pending Motion for Class Certification (ECF No. 78) and the pending Motions for Summary Judgment (ECF Nos. 123 & 129) are **denied as moot**. Marquez may file an amended complaint and attempt to adequately allege a claim of constructive discharge. To be clear, this is not an invitation for Marquez to formulate additional avenues of relief or to assert additional causes of action. That time has come and gone. He has already been given several opportunities to plead a sustainable cause of action and has yet to do so. If Marquez chooses to file a fourth and final amended complaint alleging a plausible constructive discharge claim, he must do so by **October 10, 2014.**

**Done and ordered** in chambers, at Miami, Florida, on September 25, 2014.

Robert N. Scola, Jr.
United States District Judge